# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **T.L. and E.S.**

**No. 19-0796** (Kanawha County 17-JA-502 and 17-JA-503)

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.S., by counsel Rebecca Stollar Johnson, appeals the Circuit Court of Kanawha County's July 30, 2019, order terminating her parental rights to T.L. and E.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer R. Victor, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that she failed to successfully complete her post-adjudicatory improvement period and in failing to impose a less-restrictive dispositional alternative to termination of her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2017, the DHHR filed an abuse and neglect petition that alleged petitioner and T.L.'s father engaged in domestic violence in the children's presence. The petition further alleged that two other adults in the home engaged in domestic violence in the children's presence. According to E.S.'s disclosure to a Child Protective Services ("CPS") worker, the physical violence she witnessed in the home "ma[de] her scared." The child later confirmed that she witnessed petitioner abuse drugs in the home and that the home often lacked electricity. Upon investigation, CPS located a woman who indicated that she routinely transported E.S. to and from

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

school and further informed the DHHR that she had been caring for T.L. "from about the time of his birth." This individual further corroborated E.S.'s disclosures about petitioner's conduct. During the CPS investigation, petitioner repeatedly denied issues with domestic violence and substance abuse in the home. CPS also confirmed that the electricity in the home was supplied by power cords running from another residence. Initially, petitioner agreed to permit the children to stay with the individual who had been caring for T.L. However, it was then reported to CPS that petitioner and T.L.'s father went to this individual's home and "started trouble" by demanding that she return the children to their care or they would "beat her up." When CPS discussed a possible protection plan that would permit the children to stay with the individual previously caring for T.L., petitioner and T.L.'s father "became very verbal and cuss[ed]" at the CPS worker before refusing to permit this individual to care for the children. During this discussion, T.L.'s father became "very aggressive" and informed the worker that he was going to "beat the hell" out of the woman caring for the children and take them back. The father eventually threatened to "kill anybody that has to do with CPS," including the worker to whom he was speaking. T.L.'s father then "picked up a splitting maul . . . , raised it over his head . . . [,] and brought the maul down on the wood stove" in the home. The DHHR further alleged that petitioner neglected the children by failing to supervise them, as evidenced by her failure to pick six-year-old E.S. up from the bus, and also committed educational neglect due to E.S.'s several unexcused absences from school. Accordingly, the DHHR alleged that petitioner abused and neglected the children by virtue of her substance abuse; participation in domestic violence in their presence; failure to supervise; and failure to provide necessities, such as electricity, among other allegations. Because of the parents' refusal to execute a safety plan to ensure the children's welfare, the DHHR was forced to obtain emergency custody of the children. Petitioner thereafter waived her preliminary hearing.

During the adjudicatory hearing in January of 2018, petitioner stipulated that she abused substances in the children's presence and that her substance abuse negatively affected her ability to parent the children. Petitioner also admitted that she engaged in domestic violence in the children's presence. As such, the circuit court adjudicated petitioner of abusing and neglecting the children.

At a hearing in March of 2018, the circuit court granted petitioner a post-adjudicatory improvement period. Following her acceptance into a residential substance abuse treatment program, petitioner's improvement period was extended several times. Around the time petitioner was granted an improvement period, the circuit court ordered petitioner's boyfriend, L.M., to cooperate with the DHHR if he and petitioner intended to continue their relationship. This included L.M. submitting to drug screens and providing the DHHR with the information necessary to perform a criminal background check. The circuit court's order was based on the boyfriend appearing at visits with the children and at petitioner's treatment facility, which respondents believed was disruptive to petitioner's recovery. In fact, the DHHR filed a court summary in September of 2018 that indicated petitioner was temporarily discharged from her substance abuse program because she was repeatedly "on the phone with [L.M.], constantly fighting[] and yelling." Petitioner was required to turn her phone over to the staff, but she "had another phone that was hidden" that she used to continue her disruptive behavior. L.M. failed to comply with these requirements and the circuit court eventually prohibited him from having contact with the children because of his extensive criminal history and a history of substance abuse and domestic violence.

2

Additionally, by February of 2019, the DHHR recommended the termination of petitioner's parental rights due to a lack of meaningful compliance with her improvement period.

The circuit court originally convened the dispositional hearing in February of 2019, but found that the hearing should be continued until petitioner completed her treatment program. Thereafter, the guardian moved to terminate petitioner's improvement period on the basis that she was continuing her relationship with her boyfriend, who had been barred from having contact with the children. Further, during a hearing in April of 2019, one of petitioner's service providers testified that petitioner missed six parenting education sessions and all eight of her adult life skills education sessions. In July of 2019, the DHHR filed another court summary that recommended the termination of petitioner's parental rights due to her failure to fully comply with services.

Ultimately, the parties appeared for the final dispositional hearing in July of 2019. The evidence showed that petitioner had completed her substance abuse treatment and obtained employment and housing. However, the DHHR presented evidence of petitioner's continued relationship with L.M., which petitioner denied. The record reveals that multiple individuals witnessed petitioner's continued relationship with L.M. Specifically, T.L.'s foster mother witnessed petitioner and L.M. together in a vehicle, a CPS worker observed petitioner's vehicle at L.M.'s residence on multiple occasions, E.S.'s stepmother observed petitioner and L.M. shopping together, E.S. reported that she talked to petitioner and L.M. on the phone together, and E.S. reported that L.M. stayed with petitioner and E.S. at a hotel when E.S. was given permission to attend a funeral in Ohio. The DHHR also presented evidence that petitioner had failed to comply with her required family therapy since May of 2019. According to the family therapist, E.S. disclosed instances of petitioner's conduct that established that petitioner's "actions outside of therapy [were] not consistent with the appropriate responses she provide[d] during therapy." Additionally, the circuit court heard evidence that petitioner had recently tested positive for opiates, which petitioner claimed was a result of having been prescribed opiates at the emergency room for swimmer's ear. Despite this positive drug screen, petitioner "testified that she no longer has a drug problem." In its final order, the circuit court found that petitioner's "testimony was not credible." Ultimately, the circuit court found that petitioner "failed to adequately address the concerns of substance abuse and domestic violence" because she "failed to adequately participate in the services offered and failed to benefit from them." Because the children's safety could not be assured if returned to petitioner's care, and because there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future, the circuit court terminated petitioner's parental rights to the children.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

_____

[2]T.L.'s father's parental rights were also terminated below, and the permanency plan for that child is adoption with the current foster family. E.S. has achieved permanency in the home of her nonabusing father.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner first argues that the circuit court erred in finding that she failed to successfully complete her post-adjudicatory improvement period. According to petitioner, this finding is erroneous because she "completed residential drug treatment, participated in her parenting and adult life skills [services], got and maintained a job and housing, and tested clean on all her drug screens." We find, however, that petitioner's argument in support of her assignment of error ignores evidence of her noncompliance and fails to take into account certain evidence shows that she ultimately failed to implement what she was taught in her services, which precluded the children's return to her care.

Contrary to petitioner's assertion that she participated in her parenting and adult life skills education, the record shows that the DHHR presented evidence in April of 2019 that petitioner failed to attend six parenting education sessions and all eight of her adult life skills education sessions. Additionally, testimony at the dispositional hearing established that petitioner had not complied with her required family therapy for the two months preceding that hearing. This is especially problematic given the fact that E.S. expressed a "lo[ss] of trust in [petitioner]" that the therapist indicated was exacerbated by petitioner's failure to comply with the required therapy. Further, based on disclosures from E.S., the circuit court found that petitioner's "actions outside of therapy [were] not consistent with the appropriate responses she provide[d] during therapy." It is clear that, despite petitioner's assertion on appeal, she did not fully comply with all the requirements of her improvement period.

However, even assuming petitioner had successfully completed these requirements, this Court has recognized that ""it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.''" *In re B.H.*, 233 W. Va. 57, 65, 754 S.E.2d 743, 751 (2014) (citations omitted). Further, "'[t]he assessment of the overall success of the improvement period lies within the discretion of the circuit court . . . "regardless of whether . . . the individual has completed all suggestions or goals set forth in family case plans."'" *Id.* (citations omitted). What petitioner fails to recognize is that even if this Court were to agree that she completed all the terms and conditions of her improvement period, the ultimate determination as to whether she successfully completed her improvement period hinged on whether petitioner demonstrated a legitimate change in her approach to parenting. Given the circuit court's extensive findings regarding petitioner's continued relationship with L.M. against its order and in contradiction to the children's best interests, coupled

with petitioner's positive drug screen, we find that the evidence was sufficient to support the circuit court's finding in this regard.

On appeal, petitioner argues that she rebutted the evidence that suggested she continued her relationship with L.M. by explaining that her car was parked near his residence because she had L.M.'s cousin repair her brakes and that she just happened to have "an off-chance meeting with [L.M.]" at the store. This argument, however, ignores the evidence from both E.S. and T.L.'s foster mother regarding petitioner's continued contact with L.M. Further, the circuit court heard petitioner's testimony, which it found lacked credibility, and the additional evidence she cites in support of this argument before making its determination. Given that petitioner couches this argument entirely on credibility, we decline to disturb this determination on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). As such, petitioner cannot establish that the circuit court erred in finding that she continued her relationship with L.M., an individual that the circuit court previously prohibited from having contact with the children due to his "fail[ure] to cooperate with the [c]ourt's order or with services offered." Based on L.M.'s "lengthy criminal history[] and a history of domestic violence and substance abuse," the circuit court found that L.M. "pose[d] a safety risk for the children" that petitioner failed to acknowledge. Accordingly, it is clear that the circuit court had ample evidence upon which to find that petitioner "failed to address adequately the concerns about substance abuse and domestic violence that prompted the filing of the petition." We find, therefore, that she is entitled to no relief in regard to this assignment of error.

Finally, petitioner argues that the circuit court erred in failing to impose a less-restrictive dispositional alternative to termination of her parental rights. According to petitioner, E.S. remains in her father's custody and has achieved permanency in his care. As such, petitioner argues that the circuit court could have terminated her custodial rights only, "which would have been the least[-]restrictive alternative for both the [p]etitioner and the children." Not only do we find that this argument entitles petitioner to no relief, we further note that E.S.'s placement with her biological father has no bearing on T.L.'s placement, nor does petitioner attempt to explain how her argument regarding E.S. applies to T.L. Regardless, this Court has held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id.* Clearly, E.S.'s placement with her father does not entitle petitioner to retain her parental rights to E.S., let alone to both children.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts may terminate parental rights upon findings that there is no reasonable likelihood the parent can substantially correct the conditions of abuse and neglect in the near future and that termination of parental rights is necessary for the children's welfare. Here, the circuit court made such findings. Specifically, the circuit court found that petitioner "demonstrated an inadequate capacity to solve the problems of child abuse and neglect on her own, or with help," in accordance with West Virginia Code § 49-

4-604(c). This finding was based on substantial evidence, as outlined above, including petitioner's positive drug screen upon completion of her substance abuse treatment and her repeated refusals to end her relationship with L.M., an individual the circuit court found "pose[d] a safety risk for the children." Not only did the circuit court find that petitioner "failed to acknowledge or address this safety concern," it further found that she flatly "denied having such a relationship" despite "[t]estimony from other witnesses . . . [that] belie[d] . . . [her] denials." Given that petitioner failed to acknowledge the safety risk this relationship posed and was dishonest about its ongoing nature, it is clear that the children's welfare required termination of her parental rights because their safety could not be assured in her care.

As this Court has long held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Additionally, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Again, despite petitioner's assertions that she fully complied with all the requirements of her improvement period, it is clear that the circuit court made its dispositional determination based on the children's best interests. Accordingly, petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 30, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison